*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNPUBLISHED
May 20, 2025
11:23 AM

*In re*
CALHOUN/GILMORE/GREGORY/WILLIAMS,
Minors.

No. 372451
Wayne Circuit Court
Family Division
LC No. 2024-000290-NA

Before: GADOLA, C.J., and MURRAY and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's initial dispositional order finding that statutory bases existed for the trial court to exercise jurisdiction over respondent's four minor children under MCL 712A.2(b)(1) and (2). We affirm.

## I. FACTS

In February 2024, Child Protective Services (CPS) workers investigated respondent's home after one of the children, EG, was discovered under a blanket in a stranger's yard with inadequate winter clothing. The CPS workers learned from EG, then age 11, that he often ran away from respondent's home because he was hungry and wanted to know what foster care would be like. CPS workers discovered that respondent's home, which she shared with her four minor children and a male partner, had a large hole in the roof and did not have heat or food. EG reported that respondent's partner disciplined him and the other children using a belt that left bruise marks. According to EG, respondent witnessed the beatings, but did not prevent her partner from beating the children. EG reported that he and the other children also were disciplined by respondent and her male partner by being forced to fast, sometimes for two or three days, and to do strenuous exercise for long periods of time. The other children also reported that they were not allowed food for days at a time and were made to exercise strenuously as punishment.

Petitioner filed an emergency petition for temporary wardship of the children on the basis of neglect, as well as a petition for jurisdiction and removal of the four children. The amended petition alleged neglect and physical abuse of the children, that the children were not enrolled in school nor being homeschooled, and that the children had not received medical care in several

-1-

years. The trial court entered an ex parte order taking the children into protective custody and placing them with petitioner for care and supervision pending a hearing.

The trial court held a bench trial on the petition, during which it heard testimony from EG, a CPS investigator, the children's foster care worker, a CPS specialist, and respondent. On the basis of the testimony, the trial court determined that statutory bases existed for the trial court to exercise jurisdiction over the children under MCL 712A.2(b)(1) (parent neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for child's well-being) and MCL 712A.2(b)(2) (unfit home or environment). At the conclusion of the bench trial, the trial court entered the initial order of disposition, placing the children in the care of petitioner. Respondent now appeals that order.

## II. DISCUSSION

Respondent contends that the trial court clearly erred by exercising jurisdiction over the children because petitioner failed to establish statutory bases for jurisdiction by a preponderance of the evidence. We disagree.

In Michigan, child protective proceedings are conducted in two phases; the first phase is the adjudicative phase during which the trial court determines whether there is a basis for it to exercise jurisdiction over the child. *In re Lange*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 166509); slip op at 6. If the trial court's jurisdiction is established, the proceedings move to the dispositional phase, during which the trial court determines what action it will take on behalf of the child. *Id*.

To exercise jurisdiction, the trial court must find that a preponderance of the evidence supports the determination that a statutory basis under MCL 712A.2(b) exists warranting the trial court to assume jurisdiction. *In re Lange*, ___ Mich at ___; slip op at 6. A preponderance of the evidence means that the evidence in favor of a proposition, when weighed against the evidence in opposition to the proposition, "has more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008).

In this case, the trial court assumed jurisdiction under MCL 712A.2(b)(1) and (2), which provide that the court has jurisdiction as follows, in relevant part:

> (b) Jurisdiction in proceedings concerning a juvenile under 18 years of age found within the county:
>
> > (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. As used in this sub-subdivision:
> >
> > (A) "Education" means learning based on an organized educational program that is appropriate, given the age, intelligence, ability, and psychological

limitations of a juvenile, in the subject areas of reading, spelling, mathematics, science, history, civics, writing, and English grammar.

(B) "Neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

\* \* \*

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian is an unfit place for the juvenile to live in. As used in this sub-subdivision, "neglect" means that term as defined in section 2 of the child abuse and neglect prevention act, 1982 PA 250, MCL 722.602.

We review the trial court's decision to exercise jurisdiction for clear error in light of the trial court's findings of fact. *In re Lange*, ___ Mich at ___; slip op at 6. A trial court's findings of fact are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake. *Id.*

The record in this case supports the trial court's finding that a statutory basis existed to exercise jurisdiction over the children under MCL 712A.2(b)(1), which applies to a child "[w]hose parent . . . , when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary . . . ." The record indicates that respondent failed to provide adequate housing and food for the children. The house was without heat in the winter, CPS workers investigating the home in February 2024 confirmed that it was very cold in the house, there was a hole in the roof, and there was no food in the house. EG confirmed that the home sometimes was without food, and even when there was food in the home, the children sometimes were deprived of food for two or three days as a form of discipline. There was no indication that respondent lacked the ability to provide the children with food and adequate housing.

The record also indicates that respondent refused to provide proper education for the children. For purposes of MCL 712A.2(b)(1), "[e]ducation" is defined as "learning based on an organized educational program that is appropriate, given the age, intelligence, ability, and psychological limitations of a juvenile, in the subject areas of reading, spelling, mathematics, science, history, civics, writing, and English grammar." MCL 712A.2(b)(1)(A). The CPS investigator testified, and respondent confirmed, that respondent did not use a formal homeschooling plan to teach the children, but just taught them what she wanted them to know. Respondent further testified that she began "unschooling" the children in 2023, which she described as using the lack of any educational instruction to undo past education and to make the children happier and more creative.

The record also supports a finding that respondent did not provide the children proper medical care. Respondent reported not taking the children to any doctor, claiming that she was the children's doctor, and that she made the children's medicine herself. There was no indication in the record that respondent sought medical care appropriate for the children's ages. The trial court did not clearly err by finding that a preponderance of the evidence demonstrated a statutory

basis warranting the court to assume jurisdiction of the children under to MCL 712A.2(b)(1). *In re Lange*, ___ Mich at ___; slip op at 6.

The record also supports the trial court's finding that a statutory basis existed to exercise jurisdiction over the children under MCL 712A.2(b)(2). The testimony at trial supports a finding that respondent's home was an unfit place for the minor children on the basis of neglect and abuse. For purposes of MCL 712A.2(b)(2), "[n]eglect" means

> harm to a child's health or welfare by a person responsible for the child's health or welfare that occurs through negligent treatment, including the failure to provide adequate food, clothing, shelter, or medical care, though financially able to do so, or the failure to seek financial or other reasonable means to provide adequate food, clothing, shelter, or medical care. [MCL 722.602(1)(d); MCL 712A.2(b)(2).]

The record demonstrates that respondent failed to provide adequate food, shelter, or medical care for the children. The CPS specialist testified that when she visited respondent's home in February 2024, the home did not have heat, there was a large hole in the house, and there was no food in the home. EG similarly testified that at times there was no food in the home. Again, there is no indication in the record that respondent was unable financially to provide adequate medical care, shelter, or food to the children.

The testimony at trial also supports a finding that respondent's home was an unfit place for the children to live on the basis of cruelty. EG and respondent testified that respondent and respondent's partner used fasting and forced strenuous physical exercise as punishment for the children. EG testified that the fasting typically lasted one or two days, but that respondent had forced him to fast for as long as three days. EG testified that respondent would give him food "most of the time" if he was "being good" or "wasn't in trouble." The CPS investigator testified that all of the children reported that respondent forced them to fast as a form of discipline.

Additionally, EG testified that respondent's partner beat him with a belt leaving bruises and marks on EG's body, that respondent observed the abuse, and that respondent also hit EG with a belt. We conclude that there is sufficient evidence in the record supporting the trial court's finding that respondent's home was an unfit place for the children to live. MCL 712A.2(b)(2). Accordingly, the trial court did not clearly err by finding that a preponderance of the evidence demonstrated that a statutory basis existed warranting the trial court assuming jurisdiction over the children pursuant to MCL 712A.2(b)(2).

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ James Robert Redford

-4-